IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PENNSYLVANIA NATIONAL MUTUAL ) | |
| CASUALTY INSURANCE COMPANY, ) | |
|     ) | |
|     Plaintiff, ) | |
|     ) | |
| v.   ) | CIVIL ACTION 11-0577-WS-C |
|     ) | |
| CALVIN KING, *et al.*, ) | |
|     ) | |
|     Defendants. ) | |

**ORDER**

This matter comes before the Court on the Motion to Dismiss (doc. 13) filed by defendant Baldwin County, Alabama. The Motion has been briefed and is now ripe for disposition.

**I.    Background.**

This insurance coverage declaratory judgment action arises from a dispute concerning government contractors' burial of fiber optic cable outside of a public right-of-way and on private property. According to the pleadings, Treasure Coast Contracting Svcs, LLC ("Treasure Coast") and Two-Way Communications, Inc. ("Two-Way") were retained by Baldwin County, Alabama (the "County") to perform underground installation of approximately 39 miles of fiber optic cable in 2004 and 2005. Where possible, the cable was to be positioned on existing County rights-of-way. In March 2008, Calvin and Allie King (the "Kings") complained that the cable had been buried on their property, outside of the County right-of-way. Subsequent surveying confirmed that the buried cable was approximately 18 inches off the right-of-way, encroaching on the Kings' property (as well as that of approximately 26 other property owners). No remedial work has been performed to relocate the fiber optic cable onto County rights-of-way.

In May 2009, the Kings filed suit (the "*King* Litigation") against Treasure Coast, Two-Way and the County in the Circuit Court of Baldwin County, Alabama, claiming that the defendants had trespassed on their property. A slew of cross-claims by and between various defendants ensued and, in September 2009, the Kings amended their state-court complaint to

request class certification. The *King* Litigation remains pending at this time in state court, and no money judgment has been entered against Treasure Coast, Two-Way or the County.

Plaintiff, Pennsylvania National Mutual Casualty Insurance Company ("Penn National"), issued an insurance policy (the "Policy"), including commercial general liability coverage, to Treasure Coast for the period of April 20, 2003 through April 20, 2004. Penn National is presently defending Treasure Coast in the state-court litigation under a reservation of rights. Although the County demanded a defense and indemnity under the Policy as an additional insured, Penn National has declined to provide same. Of some significance, the state court denied Penn National's motion to intervene in the *King* Litigation in August 2011. Thus, at present, Penn National is not a party to the state-court action, and the coverage issues joined in this declaratory judgment proceeding are not pending before the state court.

On October 7, 2011, Penn National filed its Complaint for Declaratory Judgment (doc. 1) in this District Court, naming as defendants the Kings, Treasure Coast, Two-Way and the County.[1] In particular, Penn National seeks declarations "[t]hat all claims against Treasure Coast do not come within the scope of coverage provided by the Policy or are excluded from coverage," that "the County is not an additional insured," and that Penn National has "no duty to defend or indemnify" any of the named defendants. (Doc. 1, at 17.)

The County filed a Motion to Dismiss (doc. 13) urging the Court to exercise its discretion not to hear this action pursuant to the abstention principles set forth in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005). Alternatively, the County contends that Penn National's indemnity claims should be dismissed on ripeness grounds. Penn National opposes the Motion.[2]

---

[1] Federal jurisdiction is predicated on the diversity provisions of 28 U.S.C. § 1332. To support that jurisdictional foothold, the Complaint sets forth specific, detailed allegations showing complete diversity of citizenship and an amount in controversy exceeding $75,000. (Doc. 1, ¶¶ 1-5, 26.) Thus, federal jurisdiction appears to have been invoked properly.

[2] For their part, the Kings have filed an Answer (doc. 10). The other two defendants, Treasure Coast and Two-Way, have not appeared, even though Penn National purports to have served them via certified mail on an unspecified date prior to October 18, 2011. (*See* doc. 7.) Nor has Penn National sought entry of default against those defendants. This issue has been addressed via separate order. (*See* doc. 19.)

**II.     *Wilton/Brillhart* Abstention.**

It is well-settled that the Declaratory Judgment Act is properly "understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). Indeed, the Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287 (citations omitted). As the Eleventh Circuit has observed, the Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Ameritas*, 411 F.3d at 1330; *see also Prudential Ins. Co. of America v. Doe*, 140 F.3d 785, 789 (8th Cir. 1998) ("the Supreme Court's decision in *Wilton* … vests the district courts with broad discretion in deciding whether to hear a declaratory judgment action"). In determining how to exercise that discretion, it bears noting that "[t]he desire of insurance companies … to receive declarations in federal court on matters of purely state law has no special call on the federal forum." *Westchester Surplus Lines Ins. Co. v. Romar House Ass'n, Inc.*, 2008 WL 5412937, *2 (S.D. Ala. Dec. 29, 2008) (quoting *State Auto Ins. Companies v. Summy*, 234 F.3d 131, 136 (3rd Cir. 2000)).

Seven decades ago, the Supreme Court opined that it would be both "uneconomical" and "vexatious" for a federal district court to hear a declaratory judgment action, concurrently with ongoing proceedings involving the same parties and same legal issues (not arising under federal law) in state court. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). *Brillhart* admonished lower courts scrupulously to avoid "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation." *Id.* In the wake of *Brillhart*, courts recognize that they have discretion to "decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties." *Ven-Fuel, Inc. v. Department of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982); *see also Federal Reserve Bank of Atlanta v. Thomas*, 220 F.3d 1235, 1247 (11th Cir. 2000) ("A court may exercise its discretion to dismiss a declaratory judgment action in favor of a pending state court proceeding that will resolve the same state law issues.").

In *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005), the Eleventh Circuit furnished district courts with guidance in how to wield their *Wilton/Brillhart* discretion

-3-

under the Declaratory Judgment Act in the presence of parallel state proceedings. *Ameritas* emphasized that district courts must balance the interests of federalism, comity, and efficiency in determining whether to hear a declaratory judgment action in those circumstances, and promulgated a non-exhaustive set of nine "guideposts" to be considered. *Id.* at 1330-31.[3]

### III.   Analysis.

#### A.   Wilton/Brillhart *Abstention and the Duty to Defend.*

As grounds for its Motion to Dismiss, the County urges the Court to exercise its *Wilton* / *Brillhart* discretion to decline to hear this matter because the County "has not been found liable for damages in the underlying state court action." (Doc. 14, at 5.) This observation is accurate, and it may provide a compelling reason to dismiss or stay Penn National's claims relating to the duty to indemnify, as discussed in section III.B., *infra*. But defendant's argument ignores the fact that Penn National's claims are not confined to requesting a declaration that it owes no duty to indemnify Treasure Coast, the County or anyone else for adverse judgments that may (or may not) be forthcoming in the *King* Litigation. Indeed, Penn National's Complaint also unequivocally requests adjudication of its duty to defend Treasure Coast and the County in the *King* Litigation. (*See* doc. 1, at 17.)[4] Yet the County's Motion to Dismiss and accompanying

---

[3]   Those guideposts are as follows: "(i) the state's interest in deciding the matter; (ii) whether a judgment in the federal action would completely resolve the controversy; (iii) whether the declaratory judgment action would clarify the parties' legal relations; (iv) whether the federal action is a form of procedural fencing being utilized to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case not otherwise removable; (v) whether a ruling in the declaratory judgment action would increase friction between federal and state courts or otherwise encroach on state proceedings; (vi) whether a superior alternative remedy exists; (vii) whether underlying facts are important to informed resolution of the matter; (viii) whether the state court is better situated than the federal court to evaluate those facts; and (ix) the nexus (if any) between the underlying issues and state law/policy, and whether federal common or statutory law requires resolution of the declaratory judgment action." *Lexington Ins. Co. v. Rolison*, 434 F. Supp.2d 1228, 1234 (S.D. Ala. 2006) (citation and internal quotation marks omitted).

[4]   Exhibits to the Complaint reflect that the duty to defend is not a mere throw-in issue, but rather constitutes a material, substantial dimension of the parties' dispute. For example, one exhibit to the Complaint is a letter from the County's representative to Penn National dated September 9, 2011, and stating in part as follows: (i) "We demand that all defense costs and other litigation cost incurred and paid by for [*sic*] the Association … in defense of Baldwin be immediately reimbursed. The cost [*sic*] are summarized in the attachment and currently amount to **$120,937.69**;" (ii) "We demand that defense for Baldwin in this case going (Continued)

principal brief do not acknowledge the duty to defend aspect of this declaratory judgment action, much less assess how principles of *Wilton / Brillhart* abstention might apply to the duty to defend. Thus, the County's request for dismissal of the entire lawsuit on abstention grounds without examination of the duty to defend issue is not meritorious.

Recognizing its omission, the County makes passing reference to the duty to defend in its reply brief, allowing that this question "may be ripe for consideration" but urging abstention nonetheless because "determination of this issue will entangle this court in resolving factual disputes which are more appropriately decided by the juries in the state court actions." (Doc. 18, at 5.) This vague contention fails on multiple levels. First, it is a new argument presented in a reply brief, and is therefore improper. *See, e.g., Herring v. Secretary, Dep't of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotes omitted); *Essex Ins. Co. v. Foley*, --- F. Supp.2d ----, 2011 WL 5155154, *3 & n.4 (S.D. Ala. Oct. 31, 2011) ("as a procedural matter, this contention is not properly raised because Essex articulated it for the first time in its reply brief"). Second, the County does not explain how this Court, by adjudicating the duty to defend issue, will become entangled in factual disputes more appropriately reserved for a state-court jury. The Court will not venture to guess what "factual disputes" the County is alluding to, and the County does not elaborate. Surely the state-court jury will neither have a copy of the Penn National insurance policy before it, nor be tasked with applying the facts of the *King* Litigation to coverage provisions in that policy. After all, no insurance coverage claims or defenses have been joined in the case.[5] This point leads to the

---

forward be provided immediately and we expect an immediate response as to Baldwin's status as an additional insured under the policy of insurance for Treasure Coast;" and (iii) "Please accept this letter as an immediate demand to you and/or your insurance company to tender defense in this matter [and] pay incurred defense costs." (Doc. 1, Exh. A.) Another exhibit to the Complaint is an affidavit in which a Penn National claims specialist avers that Penn National has already spent nearly $16,000 in defending Treasure Coast in the *King* Litigation as of August 31, 2011, and that it expects those costs to more than double through trial in that matter. (Doc. 1, Exh. D.)

[5] Besides, the duty to defend is typically assessed by comparing the allegations of the complaint to the applicable policy language, without the need for specific findings of fact as to the merits or validity of those factual allegations in the pleading. *See, e.g., Gunnin v. State* (Continued)

third, most fundamental reason for rejecting the County's argument as to the duty to defend. Penn National is not a party in the *King* Litigation. It sought to intervene in that case, but was not permitted to do so. As such, Penn National has no platform, other than this declaratory judgment action, available to it to litigate its duty to defend Treasure Coast (to which it is presently providing a defense subject to a reservation of rights) or the County (which in a stridently worded letter demanded a defense from Penn National in the *King* Litigation less than a month before this Complaint was filed). The County would have this Court utilize its discretion to slam the courthouse doors shut on Penn National, effectively guaranteeing that it cannot litigate a ripe, live dispute over its duty to defend Treasure Coast or the County. In all likelihood, dismissal of this action on abstention grounds would foreclose Penn National from ever obtaining a ruling on the merits as to its duty to defend prior to the conclusion of the *King* Litigation, at which time the issue may become moot. Nothing in the principles of "practicality and wise judicial administration" undergirding *Wilton* would justify such an unfair, draconian result in this case, traveling under the guise of lofty notions of federalism, comity and efficiency.

      Nor is the County's position bolstered by reliance on the *Ameritas* guideposts. As an initial matter, considerable precedent supports the notion that a *Wilton* / *Brillhart* analysis does not even apply in the absence of parallel litigation. *See, e.g., State Farm Fire and Cas. Co. v. Knight*, 2010 WL 551262, *3 (S.D. Ala. Feb. 11, 2010) (where parallel proceedings do not exist, "courts have shown marked reluctance to exercise their discretion to stay or dismiss the declaratory judgment action"); *Atlantic Cas. Ins. Co. v. GMC Concrete Co.*, 2007 WL 4335499, *3 (S.D. Ala. Dec. 7, 2007) ("A number of courts have either held or suggested that the absence of parallel proceedings undermines the premise of a *Wilton* discretion analysis, rendering it inappropriate or inapplicable."). In this context, "[s]uits are parallel if substantially the same

---

*Farm and Cas. Co.*, 508 F. Supp.2d 998, 1002 (M.D. Ala. 2007) ("If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured.") (citation omitted); *Tanner v. State Farm Fire & Cas. Co.*, 874 So.2d 1058, 1063 (Ala. 2003) ("Whether an insurance company owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in the complaint."); *Ajdarodini v. State Auto Mut. Ins. Co.*, 628 So.2d 312, 313 (Ala. 1993) ("An insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the action against the insured.").

parties litigate substantially the same issues in different forums." *Scottsdale Ins. Co. v. Detco Industries, Inc.*, 426 F.3d 994, 997 (8th Cir. 2005); *Essex Ins. Co. v. Foley*, 2011 WL 290423, *2 n.4 (S.D. Ala. Jan. 27, 2011) ("Where the declaratory judgment action is brought by an insurer against an insured, there are no parallel proceedings if (1) the insurer was not a party to the suit pending in state court; and (2) the state court actions involved issues regarding the insured's liability, whereas the federal suit involved matters of insurance coverage.") (citation and internal quotation marks omitted). Here, of course, Penn National is not a party to the *King* Litigation, which involves issues concerning Treasure Coast's and the County's liability to the Kings, as opposed to the insurance coverage issues presented in this action. Substantially the same parties are not litigating substantially the same issues in both federal and state courts. As there is plainly no parallel litigation, the County's *Wilton / Brillhart* analysis is flawed from its inception.

Even if consideration of the *Ameritas* guideposts were warranted here, those factors weigh heavily against abstention, at least with respect to the duty to defend. As to that issue, the relevant *Ameritas* guideposts play out as follows: (i) Alabama plainly does not have a strong interest in adjudicating Penn National's duty to defend in state court, as evidenced by the state court's denial of Penn National's request for leave to intervene in the *King* Litigation for that very purpose; (ii) this declaratory judgment action would be of tremendous value in clarifying legal relations among the parties, by resolving the parties' disagreement as to whether Penn National does or does not owe Treasure Coast and the County a defense in the state-court suit; (iii) there is no indication that Penn National engaged in "procedural fencing" by bringing this federal action, especially where it first unsuccessfully sought to intervene in the *King* Litigation to present the duty-to-defend issue to the state court; (iv) for this Court to decide Penn National's duty to defend would neither increase friction between federal and state courts nor encroach on state-court turf, given that this Court would be deciding an ancillary issue to the *King* Litigation that the Circuit Court of Baldwin County expressly declined to hear; (v) there is no reason to believe that Penn National has better, more effective alternative remedies available to it as to the duty to defend; (vi) the underlying facts are likely of little importance to resolution of the duty to defend, which (as noted *supra*) generally turns on the allegations of the complaint rather than specific factual determinations; and (vii) the state court cannot possibly be in a better position than this Court to decide the duty to defend, given that the state court has already jettisoned Penn National (and its accompanying duty-to-defend issue) from the *King* Litigation.

For all of these reasons, the County's Motion to Dismiss is **denied** as to the duty-to-defend component of this action.  Penn National properly filed its Complaint seeking a judicial declaration of whether it owes Treasure Coast or the County a defense in underlying state-court litigation.  The attendant circumstances are fundamentally inconsistent with the County's theory of opportunistic forum-shopping and gratuitous interference with state-court jurisdiction by the insurer.  In short, Penn National's petition for a federal court to adjudicate its duty to defend does not implicate the fundamental policy considerations underpinning the doctrine of *Wilton* / *Brillhart* abstention.  Accordingly, this Court will exercise its discretion to accept jurisdiction over the duty-to-defend portion of this declaratory judgment action, and will allow this claim to move forward at this time.

### B. *Ripeness and the Duty to Indemnify.*

Penn National's duty-to-indemnify claims are on a different footing.  In particular, plaintiff is requesting adjudication of whether it must indemnify Treasure Coast or the County for any adverse judgment entered against them in the *King* Litigation, even though no such judgment has been entered to date.  Case law is legion for the proposition that an insurer's duty to indemnify is not ripe for adjudication unless and until the insured or putative insured has been held liable in the underlying action.  *See, e.g., Allstate Ins. Co. v. Employers Liability Assur. Corp.*, 445 F.2d 1278, 1281 (5th Cir. 1971) ("[N]o action for declaratory relief will lie to establish an insurer's liability … until a judgment has been rendered against the insured since, until such judgment comes into being, the liabilities are contingent and may never materialize."); *Essex Ins. Co. v. Foley*, 2011 WL 1706214, *3 (S.D. Ala. May 5, 2011) ("Any discussion of the duty to indemnify would be premature, in any event, given the lack of any final adjudication of the Underlying Action."); *Harleysville Mut. Ins. Co. v. Dapper, LLC*, 2010 WL 2925779, *4 (M.D. Ala. July 21, 2010) ("If Dapper wins, the indemnification issue is moot and the Court would never reach the issue.  To resolve the duty to indemnify before the underlying state case concludes risks wasting judicial resources.").  Plaintiff does not, and cannot, dispute that the duty-to-indemnify issue joined in this action is not yet ripe because there has been no liability determination in the underlying suit.

The remaining question is what should become of this unripe duty-to-indemnify issue.  Not surprisingly, district court opinions are all over the map.  Some have ordered dismissal without prejudice, while others have simply stayed the duty-to-indemnify issue pending further

developments.  This Court favors the approach espoused by *Employers Mut. Cas. Co. v. Evans*, 76 F. Supp.2d 1257 (N.D. Ala. 1999), a case cited prominently by the County in its principal brief.  (*See* doc. 14, at 10.)  In *Evans*, the court elected to "retain jurisdiction to hear both the duty to defend and the indemnification issues. … If the court determines that there is a duty to defend, it may well be appropriate not to then reach the further issue of indemnity.  However, a determination that there is no duty to defend may well determine the duty to indemnify issue.  Both discretion and common sense mandate that the court retain jurisdiction at least until the duty to defend issue is determined …."  76 F. Supp.2d at 1262; *see also GMC Concrete*, 2007 WL 4335499, at *6 ("The duty to indemnify issue will remain part of the case, but will not be considered … until the earlier of (a) final disposition of the [underlying] Action; or (b) a ruling on the duty to defend, at which time the Court will entertain any motion that the parties may wish to file concerning the duty to indemnify claims."); *Assurance Co. of America v. Legendary Home Builders, Inc.*, 305 F. Supp.2d 1266, 1267 (S.D. Ala. 2003) (staying, rather than dismissing, duty-to-indemnify issue pending final resolution of underlying state proceeding).[6] Accordingly, the duty-to-indemnify issue will be **stayed**, rather than dismissed, at this time.

---

[6] To underscore the point made in *Evans*, it is well-established that the duty to defend may be broader than the duty to indemnify.  *See, e.g., Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc.*, 990 F.2d 598, 605 (11th Cir. 1993) ("Alabama holds that an insurer's duty to defend may be broader than its duty to indemnify.").  As such, if this Court were to determine that Penn National owes no duty to defend Treasure Coast or the County, that finding in and of itself may warrant entry of judgment in Penn National's favor as to the duty to indemnify.  *See Trailer Bridge, Inc. v. Illinois Nat'l Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011) ("[A] court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify."); *Foley*, 2011 WL 5155154, at *4 ("a judicial determination of no duty to defend compels a finding of no duty to indemnify").  Thus, retaining jurisdiction over the duty-to-indemnify issue at least until the resolution of the duty-to-defend issue is both sensible and appropriate, rather than requiring Penn National to file a new lawsuit even though the duty-to-defend ruling in this case may well be dispositive of the duty to indemnify, as well.  Also, it is entirely possible that final disposition of the *King* Litigation (which is nearly three years old) will occur during the pendency of this case, at which time the indemnity issue will become ripe or be rendered moot.  Although the County relies on *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Roberts Bros., Inc.*, 550 F. Supp.2d 1295, 1302-03 (S.D. Ala. 2008), in which the undersigned dismissed a duty-to-indemnify claim, *Roberts Bros.* is distinguishable because the insurer in that case never requested that the indemnification issue be stayed but instead challenged the Court's authority to raise the ripeness issue *sua sponte*.  By contrast, plaintiff in this case has cited convincing authority in support of a stay of the indemnification issue.

**IV.   Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1. Baldwin County's Motion to Dismiss (doc. 13) is **denied**;
2. Baldwin County must file its answer to the Complaint on or before **February 10, 2012**;
3. Plaintiff's duty-to-indemnify claim is **stayed** until the earlier of (a) final disposition of the underlying state-court litigation; or (b) a ruling on the duty to defend, at which time the Court will entertain any motion that the parties may wish to file concerning the duty-to-indemnify claims;
4. This action will proceed as to Penn National's contention that it owes no duty to defend any party in the *King* Litigation; and
5. The parties did not comply with the December 22, 2011 deadline established by the Magistrate Judge for filing their Rule 26(f) Report. (*See* doc. 12.) The parties must remedy this oversight and file their report on or before **February 17, 2012**.

DONE and ORDERED this 30th day of January, 2012.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE