IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, ) ) ) Plaintiff, ) ) v. ) CALVIN KING, *et al.*, ) ) Defendants. ) | CIVIL ACTION 11-0577-WS-C |

ORDER

This matter comes before the Court on plaintiff's Motion for Default Judgment (doc. 33) as to defendant Treasure Coast Contracting Services, LLC. On April 13, 2012, the undersigned entered an Order (doc. 34) that directed the other defendants to respond to the Motion on or before April 27, 2012. No defendants having responded, they have waived the opportunity to be heard on this Motion, which is now ripe for disposition.[1]

**I.      Background.**

Plaintiff, Pennsylvania National Mutual Insurance Company ("Penn National"), brought this insurance declaratory judgment action against five named defendants, among them its named insured, Treasure Coast Contracting Services, LLC ("Treasure Coast").[2] As to Treasure Coast,

---

[1] The April 13 Order explained that "[i]t is at least foreseeable that entry of default judgment against Treasure Coast on insurance coverage issues today could lead to incongruities and inconsistencies if all or some remaining defendants prevail in this action." (Doc. 34, at 2.) Their silence on this issue – despite being ordered to respond – reflects that those defendants do not share this concern, which the Court flagged preemptively on their behalf. Because they elected not to provide input even when the April 13 Order directed them to do so, however, those defendants will not be heard to complain at a later date should they find themselves dissatisfied with, or adversely affected by, the ruling on this Motion for Default Judgment.

[2] Federal jurisdiction was predicated on 28 U.S.C. § 1332, based on specific, detailed allegations by Penn National showing that there is complete diversity of citizenship between it and defendants, and that the amount in controversy exceeds $75,000, exclusive of interest and costs.

this action centers on Penn National's contention that it owes no duty to defend or indemnify Treasure Coast in certain proceedings pending in Baldwin County Circuit Court (the "Underlying Litigation").  In the Underlying Litigation, Calvin and Allie King filed suit against Treasure Coast and several other entities, alleging that "the defendants trespassed on plaintiff's property when they buried a fiber optic cable outside of the County's right-of-way."  (Doc. 1, ¶ 20.)

According to the well-pleaded allegations of the Complaint in the case at bar, the roots of the Underlying Litigation extend back to February 2004, when Treasure Coast (along with another entity called Two-Way Communications, Inc.) jointly submitted a bid to Baldwin County (the "County") for "a project involving the underground installation of approximately 39 miles of fiber optic cable."  (Doc. 1, ¶ 14.)  Treasure Coast and Two-Way were awarded the bid in March 2004, entered into a contract with the County at that time, and completed the project in November 2005.  (*Id.*, ¶¶ 15, 18.)  The Kings' dissatisfaction stems from alleged misplacement of the fiber optic cable by Treasure Coast and/or Two-Way.  Penn National's Complaint reflects that, after the Kings' allegations came to light, the County hired surveyors to investigate their claims, and "determined that the cable was indeed outside of the right-of-way by approximately 18 inches likely because the surveying company hired by Treasure Coast had used outdated maps drawn before the main road had been widened."  (*Id.*, ¶ 19.)  When the error was identified, "Treasure Coast initially informed the County that it would remedy the misplaced cable at its own cost but the remedial work was never performed."  (*Id.*)  As a result, in the Underlying Litigation, Treasure Coast is facing claims brought by the Kings for trespass, by Two-Way for indemnity, and by the County for indemnity, breach of contract, negligence, specific performance and fraud.  (*Id.*, ¶ 20.)  The Kings are apparently proceeding not only on their own behalf, but also as representatives for a class of all similarly situated landowners whose property rights were purportedly infringed upon by Treasure Coast's improper installation of fiber optic cable outside the designated right-of-way.

To date, Penn National has been furnishing a defense to Treasure Coast in the Underlying Litigation pursuant to a reservation of rights.  (*Id.* ¶ 21.)  Penn National's request to intervene in the Underlying Litigation was denied, so it brought this Complaint for Declaratory Judgment against the Kings, Treasure Coast, Two-Way and the County.  Penn National maintains that it owes no duty to defend Treasure Coast under a commercial general liability insurance policy (the

"Policy") issued for the period of April 2003 to April 2004, for the following reasons: (i) the Policy did not extend coverage to any joint venture such as that between Treasure Coast and Two-Way; (ii) the Kings' claims in the Underlying Litigation are not for "property damage" or "bodily injury" as defined by the Policy, and therefore are not covered; (iii) the Kings' claims are excluded by virtue of various "your work" or "your product" exclusions to the Policy; (iv) the Kings' claims do not constitute an "occurrence" within the meaning of the Policy; and (v) claims for breach of contract, breach of warranty, or for purely economic damages are not covered by the terms and conditions of the Policy. (*Id.*, ¶¶ 28-33.) On these and other theories, the Complaint states that Penn National seeks a declaratory judgment that "all claims against Treasure Coast do not come within the scope of coverage provided by the Policy or are excluded from coverage" and that "Penn National has no duty to defend or indemnify Treasure Coast … in the Underlying Litigation." (*Id.* at 17.)

The court file reflects that Penn National perfected service of process on Treasure Coast not once, but twice, during the last seven months. In particular, Penn National served process on Treasure Coast, by and through its registered agent and sole member, William R. Jewett, Jr., via certified mail on or about October 18, 2011 and by personal service on March 8, 2012. (Docs. 7, 33 Exh. 6.)[3] Notwithstanding such valid service on a pair of occasions, Treasure Coast neither appeared nor otherwise undertook any effort to defend against Penn National's claims in this action. On that basis, a Clerk's Entry of Default (doc. 25) was entered against Treasure Coast on February 3, 2012, pursuant to Rule 55(a), Fed.R.Civ.P. Thereafter, Penn National filed its Motion for Default Judgment, with incorporated memorandum and supporting documentation.[4]

---

[3] On both occasions, Penn National served Jewett at his place of incarceration, to-wit: the Federal Correctional Institution located in Yazoo City, Mississippi. On September 22, 2010, District Judge DuBose of this District Court sentenced Jewett to a term of imprisonment of 76 months after he entered guilty pleas to one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and one count of failure to appear after pretrial release, in violation of 18 U.S.C. § 3146. As to the latter charge, the record shows that Jewett purchased a 49-foot sailboat and absconded while on pretrial release as to the firearm charge in April 2009, such that he willfully failed to appear for jury selection and arraignment in August 2009. Jewett was ultimately arrested aboard the vessel in a marina in Belize City, Belize in January 2010.

[4] Certificates of Service confirm that Penn National mailed copies of both its Application for Entry of Default (doc. 23) and its Motion for Default Judgment (doc. 33) to (Continued)

**II.    Analysis.**

In this Circuit, "there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor." *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003); *see also Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada*, 674 F.2d 1365, 1369 (11th Cir. 1982) ("Since this case involves a default judgment there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment."). Nonetheless, it is well established that a "district court has the authority to enter default judgment for failure … to comply with its orders or rules of procedure." *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).

Where, as here, a defendant has failed to appear or otherwise acknowledge the pendency of a lawsuit for more than six months after first being served, entry of default judgment is appropriate. Indeed, Rule 55 itself provides for entry of default and default judgment where a defendant "has failed to plead or otherwise defend." Rule 55(a), Fed.R.Civ.P. In a variety of contexts, courts have entered default judgments against defendants who have failed to appear and defend in a timely manner following proper service of process.[5] In short, "[w]hile modern courts do not favor default judgments, they are certainly appropriate when the adversary process has been halted because of an essentially unresponsive party." *Flynn v. Angelucci Bros. & Sons,*

---

Treasure Coast by and through its sole member and registered agent, Jewett. As such, there can be no doubt that Treasure Coast has received unequivocal, repeated notice of these ongoing default proceedings. In light of that fact, the Court finds that no further notice or invitation to Treasure Coast is warranted or required prior to entry of default judgment.

[5]    *See, e.g., In re Knight*, 833 F.2d 1515, 1516 (11th Cir. 1987) ("Where a party offers no good reason for the late filing of its answer, entry of default judgment against that party is appropriate."); *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992) ("when the court finds an intentional failure of responsive pleadings there need be no other finding" to justify default judgment); *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp.2d 1287, 1290 (S.D. Ala. 2010) ("Where, as here, a defendant has failed to appear or otherwise acknowledge the pendency of a lawsuit for more than three months after being served, entry of default judgment is appropriate."); *Kidd v. Andrews*, 340 F. Supp.2d 333, 338 (W.D.N.Y. 2004) (entering default judgment against defendant who failed to answer or move against complaint for nearly three months); *Viveros v. Nationwide Janitorial Ass'n, Inc.*, 200 F.R.D. 681, 684 (N.D. Ga. 2000) (entering default judgment against counterclaim defendant who had failed to answer or otherwise respond within time provided by Rule 12(a)(2)).

*Inc.*, 448 F. Supp.2d 193, 195 (D.D.C. 2006) (citation omitted).  That is precisely what has happened here.  Despite being served with process back in October, Treasure Coast has declined to appear or defend, and has effectively prevented this litigation from leaving the starting blocks, at least as to Penn National's claims against it.

The law is clear, however, that Treasure Coast's failure to appear and the Clerk's Entry of Default do not automatically entitle Penn National to a default judgment.  A default is not "an absolute confession by the defendant of his liability and of the plaintiff's right to recover," but is instead merely "an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability."  *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp.2d 1353, 1357 (S.D. Ga. 2004); *see also Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1204 (5th Cir. 1975) (similar); *Descent v. Kolitsidas*, 396 F. Supp.2d 1315, 1316 (M.D. Fla. 2005) ("the defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief").  Stated differently, "a default judgment cannot stand on a complaint that fails to state a claim."  *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997); *see also Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) ("A default defendant may, on appeal, challenge the sufficiency of the complaint, even if he may not challenge the sufficiency of the proof.").

In light of these principles, the Court has reviewed the Complaint, and is satisfied that Penn National has established a viable claim to be relieved of the duty to defend Treasure Coast in the Underlying Litigation.  Several of the recited Policy provisions on which Penn National relies would appear on their face -- when coupled with the factual allegations presented in the Complaint which Treasure Coast has in no way controverted or contested -- to foreclose any insurance coverage for Treasure Coast in the Underlying Litigation.  As such, the Court finds that Penn National is entitled to a default judgment on its claim seeking a declaration that it has no duty to defend Treasure Coast in the Underlying Litigation.  And the entry of default judgment against Treasure Coast as to the duty to defend inexorably warrants entry of default judgment against Treasure Coast as to the duty to indemnify.  *See Trailer Bridge, Inc. v. Illinois Nat'l Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011) ("[A] court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify."); *Essex Ins. Co. v. Foley*, --- F. Supp.2d ----, 2011 WL 5155154, *4 (S.D. Ala. Oct. 31, 2011) ("[A]s recent

Eleventh Circuit precedent confirms, a judicial determination of no duty to defend compels a finding of no duty to indemnify.").[6] Thus, the entry of a default judgment in Penn National's favor as to its duty to defend Treasure Coast in the Underlying Litigation necessarily calls for entry of default judgment in Penn National's favor as to its narrower duty to indemnify Treasure Coast in the Underlying Litigation.

### III.     Conclusion.

For all of the foregoing reasons, Penn National's Motion for Default Judgment (doc. 33) is **granted**.  In that regard, the Court will enter a separate default judgment against Treasure Coast confirming that Penn National owes no duty to furnish a defense or to indemnify Treasure Coast in the Underlying Litigation.

This action will proceed as between Penn National and the remaining defendants (Calvin and Allie King, Two-Way Communications, Inc., and Baldwin County, Alabama), in accordance with the applicable Rule 16(b) Scheduling Order.

DONE and ORDERED this 15th day of May, 2012.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[6]     *See also National Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010) ("If an insurer has no duty to defend, it has no duty to indemnify."); *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 595 n. 3 (3rd Cir. 2009) ("A finding that the duty to defend is not present will preclude a duty to indemnify."); *Global Title, LLC v. St. Paul Fire & Marine Ins. Co.*, 788 F. Supp.2d 453, 458 (E.D. Va. 2011) ("If there is no duty to defend …, there can be no duty to indemnify.") (citation omitted); *Nautilus Ins. Co. v. Structure Builders & Riggers Machinery Moving Div., LLC*, 784 F. Supp.2d 767, 771 (E.D. Ky. 2011) ("If there is no duty to defend, then there is no duty to indemnify because the duty to defend is broader."); *Murphy v. Acceptance Indem. Ins. Co.*, 788 F. Supp.2d 332 (D. Vt. 2011) ("[B]ecause the duty to defend is broader than an insurer's duty to indemnify, if a court determines that there is no duty to defend, the insurer will not have a duty to indemnify.") (citations omitted); *Kenneth Cole Productions, Inc. v. Mid-Continent Cas. Co.*, 763 F. Supp.2d 1331, 1334 (S.D. Fla. 2010) ("the duty to indemnify is narrower than the duty to defend and thus cannot exist if there is no duty to defend") (citations omitted).